```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LUIS RIVERA,                            :
                                        :
                     Plaintiff,         :
                                        :          04 Civ. 3032 (DLC)
          -v-                           :
                                        :          OPINION & ORDER
THE CITY OF NEW YORK and OFFICER        :
NAPOLITANO,                             :
                                        :
                     Defendants.        :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
Luis Rivera
Pro Se

For Defendants:

Hillary A. Frommer
Assistant Corporation Counsel
100 Church Street
Room 3-212
New York, New York 10007



DENISE COTE, District Judge:

Luis Rivera ("Rivera") alleges that his arrest by Captain Richard Napolitano ("Napolitano") of the New York City Police Department violated Rivera's constitutional rights giving rise to damages under 42 U.S.C. § 1983 ("Section 1983"). Rivera also alleges claims under state law for false imprisonment and false arrest. In his amended complaint, filed on August 20, 2004 ("Complaint"), Rivera names both Napolitano and The City of New York ("City") as defendants. Following the close of discovery, on August 25, 2005, the defendants moved for summary judgment

pursuant to Rule 56 of Federal Rules of Civil Procedure. For the following reasons the motion is granted.

## Background

There is little dispute as to the facts in this action. The following facts are either undisputed or taken in the light most favorable to the plaintiff.[1] Rivera is an Hispanic male. On December 4, 2003 he was conducting a field investigation for his employer, Lefrak City Rental. At 4:40 p.m., Rivera was sitting in a car parked in front of 150-15 59th Street in Flushing, NY, waiting for an appointment.

Napolitano came upon Rivera's car while on patrol with police officer Chenet. The area Napolitano patrolled included 59th Avenue in Flushing, which had been victimized by numerous burglaries over the previous month. As part of his patrol duties Napolitano checked the license plates of cars in the street to investigate whether any of them were reported as stolen or had been involved in any criminal activity.

The officers observed the defendant sitting alone in a car for approximately fifteen minutes. Napolitano then ran a computer check on the license plate of the car which revealed both that the car was registered to a Luis Rivera and that a man named Luis Rivera was wanted on a previous arrest in the Bronx

---

[1] Rivera did not oppose the defendants' motion for summary judgment. Therefore, the facts are drawn from the Complaint in addition to the affidavits submitted with the defendants' motion.
   Rivera did not commence his action as a pro se litigant. He was represented by counsel at the time he filed his amended complaint. His counsel was relieved, with the plaintiff's consent, by Order on May 5, 2005. Since May 5, no attorney has filed a notice of appearance on the plaintiff's behalf.

2

for Driving While Intoxicated ("DWI"). Based on that information Napolitano approached the car and asked for Rivera's driver's license. Rivera told Napolitano his name and gave him his license. Over the course of their conversation, Napolitano also learned that Rivera did not live in the neighborhood and that he had previously lived in the Bronx.

Napolitano then checked Rivera's license against the information he had received on the outstanding warrant. The date of birth on Rivera's license matched the date of birth on the warrant. At that point Napolitano informed Mr. Rivera that he had to bring him to the precinct on the outstanding DWI warrant. Rivera protested and said that he did not have an outstanding warrant for DWI. Napolitano explained that based on the information he had in front of him, he had to bring Rivera to the precinct where he could investigate the claim that he was not the individual wanted for the DWI. Rivera was then handcuffed and transported by Napolitano to the 109th Precinct.

Upon arriving at the precinct Rivera was placed in a cell while the outstanding warrant was investigated. The investigation took approximately an hour and revealed the outstanding warrant was not for the plaintiff. Upon discovering the mistake Rivera was released from his cell, his arrest was voided and he was transported back to his car.

Rivera alleges that his arrest was without justification and was motivated by the fact that he was an Hispanic man in a predominantly Asian neighborhood. He further alleges that the incident was part of a pervasive and widespread practice of the New York Police Department.

3

Discussion

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Fed. R. Civ. P. 56(e); accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

A.  Section 1983

To sustain a cause of action under Section 1983 Rivera must show that his arrest was made under the color of state law and that it deprived him of a "right secured by the Constitution or laws of the United States." Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004). It is not contested that Napolitano was acting under the color of state law, the only question is whether Rivera suffered a violation of his constitutional rights. The allegations in the Complaint support two possible violations.

4

First, by alleging that his arrest was intentional and without probable cause, Rivera pleads a claim for a violation of his Fourth Amendment rights. Lennon v. Miller, 66 F.3d 416, 423 n.2 (2d Cir. 1995) (locating the constitutional right to be free from false arrest in the Fourth Amendment). Second, by alleging that his arrest was motivated by race discrimination, Rivera claims a violation of his right to the equal protection of the laws guaranteed by the Fourteenth Amendment.

To establish a claim for false arrest under Section 1983 a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "Because probable cause to arrest constitutes justification there can be no claim for false arrest where the officer had probable cause to arrest the plaintiff." Id.

The question of whether or not probable cause existed may be determined as a matter of law on a motion for summary judgment "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. In making a determination on probable cause "courts must consider those facts available to the officer at the time of the arrest and immediately before it." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (citation omitted). Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is

5

committing a crime." Escalera, 361 F.3d at 743 (citation omitted).

There is no issue of disputed fact in this case on the question of probable cause. Napolitano learned from the computer check that there was an outstanding warrant for a Luis Rivera on an arrest for DWI in the Bronx. After having asked to see Rivera's license and having ascertained that he had previously lived in the Bronx, Napolitano had information that the man in the car had the same name and date of birth indicated on the warrant and that he had lived in the place where the arrest had occurred.

Officers may rely on information generated from computer checks in determining that they have probable cause to make an arrest. See, e.g., United States v. Towne, 870 F.2d 880, 884 (2d Cir. 1989); Vasquez v. McPherson, 285 F. Supp. 2d 334, 341 (S.D.N.Y. 2003); see also People v. Malone, 735 N.Y.S.2d 305, 306 (App. Div. 4th Dept. 2001); People v. Davis, 716 N.Y.S.2d 712, 713 (App. Div. 2nd Dept. 2000); Moscatelli v. City of Middletown, 675 N.Y.S.2d 639, 639 (App. Div. 2nd Dept. 1998). Rivera has not suggested that the information generated by the computer check was in any way invalid, only that it was not accurately applied to him. Napolitano was justified in relying on the information generated from the computer check in deciding that he had probable cause to make the arrest.

The fact that it was later discovered the wrong Luis Rivera had been arrested is irrelevant to the plaintiff's claim. "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact the suspect is later

6

acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Because probable cause is a complete defense to false arrest, summary judgment is granted on Rivera's Section 1983 claim for a violation of his Fourth Amendment rights.

Rivera also asserts that the decision to arrest him was motivated by race, a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause mandates that all persons "similarly situated...be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). In order to sustain his equal protection claim, Rivera must establish that he was 1) selectively treated compared with others similarly situated, and 2) that such selective treatment was based on an impermissible consideration such as race. Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999). Rivera has not presented any evidence to establish a question of material fact on either element. He has only presented conclusory allegations which are not enough to survive a motion for summary judgment. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

To the extent Rivera has pleaded Section 1983 claims against the City under Monell v. Department of Social Services, 436 U.S. 658 (1978), those claims require him to prove an underlying violation of his rights. Id. at 690. Since he has failed to show that there is a material question of fact regarding any violation of his rights under federal law, the claims against the City must be dismissed as well. Summary judgment is granted on

Rivera's Section 1983 claims.

B. State Law Claims

Finally, Rivera alleges claims for false arrest and false imprisonment against both defendants. Under New York law "the tort of false arrest is synonymous with that of false imprisonment." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). Claims for false arrest brought under Section 1983 are substantially the same as a state law claim for false arrest, Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003), and as is the case with Section 1983 claims, probable cause is an affirmative defense, Broughton v. State, 37 N.Y.2d 451, 458 (1975). Because Napolitano had probable cause to arrest Rivera, summary judgment is proper on both state law claims.

## Conclusion

The defendants' motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated: New York, New York
November 9, 2005

DENISE COTE
United States District Judge

8